IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL BETHARD, | : |
| Petitioner, | : |
| v. | : Civ. Act. No. 16-835-RGA |
| CLAIRE DEMATTEIS, Commissioner, KOLAWOLE AKINBAYO, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | : |
| Respondents.[1] | : |

## MEMORANDUM OPINION

J. Brendan O'Neill, Office of Defense Services for the State of Delaware, Wilmington, Delaware. Attorney for Petitioner.

Brian L. Arban, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

September 19, 2019
Wilmington, Delaware

---

[1] Commissioner Claire DeMatteis and Warden Kolawole Akinbayo have replaced former Commissioner Robert M. Coupe, and former Warden Steven Wesley, who were original parties in this case. *See* Fed. R. Civ. P. 11(d).

ANDREWS, UNITED STATES DISTRICT JUDGE:

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Michael Bethard. (D.I. 2) The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 9; D.I. 15) For the reasons discussed, the Court will dismiss Petitioner's § 2254 Petition as time-barred by the one-year period of limitations prescribed in 28 U.S.C. § 2244(d)(1).

## I. BACKGROUND

On June 27, 2013, Petitioner pled guilty to, *inter alia*, drug dealing (as a lesser-included offense of aggravated possession) and a single count of endangering the welfare of a child. (D.I. 9 at 1-2) On that same day, the Superior Court sentenced Petitioner as follows: (1) for the drug dealing conviction, to fifteen years of Level V incarceration, suspended after successful completion of the Greentree Program for six months at Level IV, followed by a year at Level III probation; and (2) for the endangering conviction, to one year of Level V, suspended for a year of probation to run concurrently. (D.I. 9 at 2) Petitioner did not file a direct appeal.

On September 6, 2013, Petitioner filed a motion for modification of sentence, which the Superior Court denied on September 27, 2013. He did not appeal that decision. (D.I. 9 at 2)

On December 19, 2014, Delaware's Office of Defense Services ("OPD") filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on Petitioner's behalf, which the Superior Court dismissed on April 20, 2015. (D.I. 9 at 2) The Superior Court denied his motion for reargument on June 17, 2015. The Delaware Supreme Court affirmed the Superior Court's denial of Petitioner's Rule 61 motion on December 9, 2015. (D.I. 9 at 2)

On September 21, 2016, the OPD filed a § 2254 Petition on Petitioner's behalf, asserting that Petitioner's lack of knowledge of an evidence scandal at the Office of the Chief Medical Examiner ("OCME") was material to his decision to plead guilty and, therefore, his guilty plea was involuntary pursuant to *Brady v. United States*, 397 U.S. 742, 748 (1970). (D.I. 2) Petitioner also argues that the Delaware Supreme Court made unreasonable findings of fact during his post-conviction appeal regarding OCME misconduct. The State filed an Answer asserting that the Petition should be dismissed as time-barred or, alternatively, because the claim is meritless. (D.I. 9) Petitioner filed a Reply, asserting that the Petition should be deemed timely filed after applying § 2244(d)(1)(D) and the doctrine of equitable tolling. (D.I. 15 at 7-8)

### A. OCME CRIMINAL INVESTIGATION

The relevant information regarding the OCME evidence mishandling is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME.
>
> The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.
>
> There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in

2

> fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

## II. TIMELINESS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

Petitioner's § 2254 Petition, filed in 2016, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The State contends that the starting date for the limitations period is July 29, 2013, the date on which Petitioner's conviction became final. (D.I. 9 at 7) Petitioner, however, appears to assert that he is entitled to

3

a later starting date for AEDPA's limitations period – April 15, 2014 – under § 2244(d)(1)(D), because that is the date on which the State began to notify defendants in certain active cases about the OCME evidence misconduct. (D.I. 15 at 7)

In order to determine if the April 15, 2014 revelation of the OCME misconduct constitutes a newly discovered factual predicate warranting a later starting date for the limitations period under §2244(d)(1)(D), the Court must first distill Petitioner's argument to its core. The argument appears to be two-fold. First, Petitioner contends that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose that there was ongoing misconduct at the OCME during the time he was considering whether to enter a plea. Second, he contends that the Delaware state courts should have deemed his guilty plea involuntary under *Brady v. United States*, 397 U.S. 742, 748 (1970) due to the State's failure to disclose the *Brady v. Maryland* evidence, *i.e.*, the OCME misconduct. In short, Petitioner asserts that his lack of knowledge about the OCME misconduct is vital to his habeas claim because that lack of knowledge rendered his guilty plea involuntary and unknowing under *Brady v. United States*.

Pursuant to *Brady v. United States*, a guilty plea is considered involuntary if it is "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady*, 397 U.S. at 755. A violation of *Brady v. Maryland* occurs when the government fails to disclose evidence materially favorable to the accused, including both impeachment evidence and exculpatory evidence.[2] *See United States v. Bagley*, 473 U.S. 667, 676 (1985). For purposes of

---

[2]A petitioner establishes a *Brady v. Maryland* violation by showing that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value: (2)

4

the inquiry under § 2244(d)(1)(D), whether or not the OCME misconduct affected, or could have affected, Petitioner's decision to plead guilty depends on whether the drugs in his case were tested by the OCME and the results were provided to him prior to entering a plea. Therefore, in order to trigger a later starting date under § 2244(d)(1)(D) for this involuntary plea/*Brady v. Maryland* Claim, Petitioner must show that (1) the drug evidence in his case was tested by the OCME and he received the results of the test before entering a plea; and (2) exercising due diligence, he could not have learned that the evidence in his case may have been part of the compromised drug evidence involved in the OCME scandal until April 15, 2014.

Petitioner has not met this burden, because he has not satisfied the first prong of this test. While Petitioner does not explicitly state whether drugs in his case were sent to the OCME for testing or not, he does states that "it is not clear from the record whether a lab report regarding the composition of the substances was issued by the Office of the Chief Medical Examiner." (D.I. 7 at 8-9) Given these circumstances, Petitioner has not demonstrated that the test results – if any – were provided to him prior to his entering a plea. Consequently, it cannot be said that the test results – if any – played a factor in Petitioner's decision to plead guilty. Thus, the Court need not address the second prong of the aforementioned test, and concludes that Petitioner has not established a factual predicate triggering a later starting date for the limitations period under § 2244(d)(1)(D). Accordingly, the one-year limitations period began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

---

the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004).

Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the one-year period begins to run, upon expiration of the time period allowed for seeking direct review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). Here, the Delaware Superior Court sentenced Petitioner on June 27, 2013, and he did not appeal that judgment. Therefore, Petitioner's conviction became final on July 29, 2013. *See* Del. Supr. Ct. R. 6(a)(ii) (establishing a thirty day period for timely filing of notice of appeal). Applying the one-year limitations period to that date, Petitioner had until July 29, 2014 to timely file his Petition. *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005)(holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015)(AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date of the triggering event which, in most cases, is the date on which the judgment of conviction became final).

Petitioner did not file the instant § 2254 petition until September 21, 2016, more than two years after the expiration of AEDPA's statute of limitations. Therefore, the Petition is time-barred, unless the limitations period can be statutorily or equitably tolled. *See Holland v. Florida*, 560 U.S. 631, 645 (2010)(equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling). The Court will discuss each doctrine in turn.

**A. Statutory Tolling**

Pursuant to § 2244(d)(2), a properly filed application for state collateral review tolls AEDPA's limitations period during the time the application is pending in the state courts, including any post-conviction appeals, provided that the application is filed during AEDPA's

one-year limitations period. *Swartz v. Meyers*, 204 F.3d 417, 424-25 (3d Cir. 2000). However, the limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

When Petitioner filed his motion for modification of sentence on September 6, 2013, thirty-eight days of AEDPA's limitations period had expired. The motion for modification of sentence tolled the limitations period through October 28, 2013, which includes the thirty-day appeal period.[3] The limitations clock started to run again on October 29, 2013, and ran the remaining 327 days without interruption until it expired on September 22, 2014.[4] In these circumstances, Petitioner's Rule 61 motion, filed on December 19, 2014, has no statutory tolling effect. Thus, the Petition is time-barred, unless equitable tolling applies.

## B. Equitable Tolling

Pursuant to the equitable tolling doctrine, the one-year limitations period may be tolled in very rare circumstances for equitable reasons when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (emphasis added). Equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.*; *Miller v. New Jersey State Dept. of Corr.*, 145 F.3d 616, 618-19 (3d Cir. 1998). A petitioner's obligation to act diligently applies to both his filing of the federal habeas application and to his filing of state

---

[3]The last day to appeal fell on weekend, therefore, the appellate period extended through Monday October 28, 2013. *See* Del. Sup. Ct. R. 11(a).
[4]The last day fell on a weekend, therefore, the limitations period extended through Monday, September 22, 2014. *See* Fed. R. Civ. P. 6(a).

post-conviction applications. *See LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir.2005). In turn, the Third Circuit has explained that equitable tolling of AEDPA's limitations period may be appropriate in the following circumstances:

> (1) where the defendant (or the court) actively misled the plaintiff;
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*Jones*, 195 F.3d at 159; *Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001).

Here, Petitioner contends that equitable tolling is warranted because a significant portion of the "delay" in him waiting until September 21, 2016 to file the instant Petition was "caused by a deceptive member of the prosecution team." (D.I. 15 at 8) He contends:

> It would be inequitable to prevent him from seeking relief when several similarly situated petitioners will have their claims heard even though they discovered the misconduct at the same time as he did, filed their petitions at the same time or after he did and exhausted their state remedies around the same time as he did. It is unfair to penalize him because his counsel's state resources were significantly strained due to the hundreds of motions they filed upon discovery of the misconduct.

(D.I. 15 at 8) Petitioner also states:

> Other extraordinary circumstances resulted from the systemic nature of the government misconduct. Counsel had to: 1) identify which of a vast number of clients had viable claims; 2) contact all of those clients; 3) file a vast number of petitions for those with legitimate claims; 4) operate with limited state resources strained by the volume of filings; 5) stop filing petitions in order to research and brief issues raised due to the Superior Court's abrupt and drastic amendment to Rule 61 without notice to counsel; 6) prepare for, participate in, and submit briefing following a 3-day evidentiary hearing to uncover further evidence of OCME misconduct; and 7) repeatedly supplement filed motions with new evidence of misconduct that continued to trickle out over the next two or more years.

(D.I. 15 at 8-9)

Petitioner's equitable tolling argument is unavailing. To begin, the events on Petitioner's "list" of alleged "extraordinary circumstances" do not constitute extraordinary circumstances for equitable tolling purposes. *See Hendricks v. Johnson*, 62 F. Supp. 3d 406, 411 (D. Del. 2014)(explaining that "attorney error, miscalculation, inadequate research, or other mistakes" do not amount to extraordinary circumstances for equitable tolling purposes). Even if these "events" could somehow be construed as extraordinary, Petitioner has not demonstrated that they actually prevented him from filing a basic habeas petition. *See Ross v. Varano*, 712 F.3d 784, 803 (3rd Cir. 2013)("[F]or a petitioner to obtain relief [via equitable tolling] there must be a causal connection, or nexus, between the extraordinary circumstances he faced and the petitioner's failure to file a timely federal petition."). For instance, Petitioner concedes that, as of April 15, 2014, he had a reasonable basis to conclude that drug evidence of all types at the OCME had been compromised, and at least one lab employee had been tampering or stealing evidence. (D.I. 15 at 7) Given this concession, the Court is not persuaded by Petitioner's assertion that he could not have filed his Rule 61 motion before December 19, 2014. Additionally, since Petitioner was aware of enough basic facts of the OCME scandal in April 2014, he has failed to demonstrate that he was **actually prevented** from filing a timely protective petition[5] in this Court before the expiration of AEDPA's limitations period on September 22, 2014. *See Ross*, 712 F.3d at 803 (3rd Cir. 2013). Finally, while a habeas petition filed on or around the time he filed his Rule 61 motion (December 19, 2014) would still have been

---

[5]In *Pace v. DiGuglielmo*, the Supreme Court explained that a "petitioner's reasonable confusion about whether a state filing would be timely" when attempting to exhaust state remedies may constitute good cause for him to file a "protective petition in federal court and ask[] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).

9

untimely, Petitioner's act of filing a protective petition around that time would have helped to demonstrate reasonable diligence on Petitioner's part. *See, e.g., Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)(once the extraordinary circumstance ends, petitioner must exercise reasonable diligence in filing his petition).

For all of these reasons, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented. Accordingly, the Court will deny the instant Petition as time-barred.[6]

### III. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484.

---

[6]Having concluded that it must deny the Petition as time-barred, the Court will not address the State's alternate reason for denying the Petition.

The Court has concluded that the instant Petition is time-barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## IV. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is **DENIED**. An appropriate Order will be entered.